IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STATE FARM FIRE AND CASUALTY COMPANY,        Civil No. 05-722-AA
an Illinois corporation,                     OPINION AND ORDER

      Plaintiff,

  vs.

ROBERT LEON WOLF and P.H.,

      Defendants.

---

J. Philip Parks
Parks, Bauer, Sime, Winkler & Fernety LLP
570 Liberty Street S.E., Suite 200
Salem, Oregon 97301
    Attorney for plaintiff

Scott O. Pratt
Attorney at Law
806 SW Broadway, Suite 1200
Portland, Oregon 97205-3314
    Attorney for defendant Robert Leon Wolf

Truman A. Stone
Brown, Tallow, Bridges & Palmer, P.C.
515 East First Street
Newburg, Oregon 97132
    Attorney for defendant P.H.

AIKEN, Judge:

Plaintiff filed a partial motion for summary judgment asserting that it has no duty to defend an action brought against its insured, defendant Robert Leon Wolf, by P.H. Defendant Wolf brought a cross-motion for partial summary judgment arguing that plaintiff does, in fact, have a duty to defend him in the underlying lawsuit. Plaintiff's motion is granted and defendant Wolf's motion is denied.

## BACKGROUND

The facts are not in dispute. Defendant P.H. filed a lawsuit in Multnomah County State Court against defendant Wolf, a 38-year-old attorney at the time, for sexual assault and battery of a child, intentional infliction of emotional distress, breach of fiduciary duty and negligence. P.H. alleges that Wolf represented her in a personal injury action when she was 16 years old for injuries she received in a 1987 automobile accident. The injuries left P.H. with cognitive and memory impairment. In 1998, the personal injury action was settled. On the day the court approved the settlement, Wolf rented a limousine and picked P.H. up at a downtown Portland office building. Wolf had with him a bottle of wine and a condom. Finding no cork screw in the limousine, Wolf asked the chauffeur to purchase a cork screw. While the chauffeur was purchasing the cork screw, Wolf got out of the back seat of the limousine and into the driver's seat in

order to ascertain whether the chauffeur would be able to see what was going on in the back seat. The chauffeur then began to drive Wolf and P.H. around town. Wolf opened the bottle of wine and furnished it to the plaintiff. After plaintiff had consumed some of the wine, Wolf began kissing and fondling P.H., and then had sexual intercourse with P.H. in the back seat of the limousine. After Wolf had sexual intercourse with P.H., he warned her not to tell any of her friends because he could be blackmailed.

At the time of the alleged incident in the underlying action, Wolf was insured under two policies issued by plaintiff: a Homeowners Policy, and a Personal Liability Umbrella Policy. The Homeowners Policy provides, in relevant part:

COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:

a. pay up to our limit of liability for the damages for which the insured is legally liable; and

b. provide a defense at our expense by counsel of our choice[.]

\* \* \*

Coverage L - Personal Liability . . . [does] not apply to:

a. bodily injury or property damage which is expected or intended by the insured.

Wolf's Personal Liability Umbrella Policy provides, in

relevant part:

> Loss: an accident that results in personal injury or property damage during the policy period. This includes injurious exposure to conditions.
>
> 1. COVERAGE L - Personal Liability: If you are legally obligated to pay damages for a loss, we will pay your net loss minus the retained limit[.]
>
> 2. Defense and Settlement:
>
> a. We may investigate, negotiate and settle any claim or suit covered by this policy.
>
> The term "loss" is defined as follows:
>
> Loss: An accident that results in personal injury or property damage during the policy period. This includes exposure to conditions.
>
> * * *
>
> We will not provide coverage:
>
> * * *
>
> 2. if you intended to cause the personal injury[.]

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether

Page 4 - OPINION AND ORDER

the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

## DISCUSSION

Plaintiff argues that it has no duty to defend its insured, Wolf, in the underlying lawsuit brought against him by P.H. The parties agree that subject to certain exceptions, an insurer's duty to defend an action against its insured depends on two documents: the complaint and the insurance policy. Ledford v. Gutoski, 319 Or. 397, 399, 877 P.2d 80 (1994). "In evaluating whether an insurer has a duty to defend, the court looks only at

the facts alleged in the complaint to determine whether they provide a basis for recovery that could be covered by the policy[.]" Id. at 400.

Plaintiff argues that although the underlying complaint against Wolf does not specifically allege that he intended to harm the plaintiff, a complaint that does not expressly allege that the insured intended to cause injury "may nonetheless compel such an inference by the very gravamen of its allegations." Drake v. Mutual of Enumclaw Insurance Co., 167 Or. app. 475, 482, 1 P.3d 1065 (2000).

Plaintiff asserts that the sexual assault of a minor by an adult has been expressly held to be the type of conduct where an intent to harm will be inferred as a matter of law. Plaintiff cites to Mutual of Enumclaw v. Merrill, 102 Or. App. 408, 794 P.2d 1243 (1990), where the underlying complaint alleged that Merrill had sexually abused his granddaughter, causing her physical and emotional injury. Merrill argued that he did not intend to harm his granddaughter and that his conduct should therefore be covered by the insurance policy. The court held that there are some intentional acts the nature of which are such that it must necessarily be concluded that there was an intent to harm. The court stated:

> The fact that Merrill did not subjectively intend the specific injuries that defendant sustained - or any injuries - does not matter, because an injurious intent is necessarily inferred from this type of

Page 6 - OPINION AND ORDER

> intentional misconduct. Defendant's contrary argument
> is little short of absurd. One of the reasons sexual
> abuse of a child is a tort - and a crime - is because
> of the great risk that the child will be physically
> or emotionally harmed.

Id. at 412.

Nonetheless, Wolf argues that it is not sufficient that an insured's intentional, even unlawful, acts result in harm. "[T]he acts must have been committed for the purpose of inflicting the injury and harm before either a policy provision excluding intentional harm applies or the public policy against insurability attaches." Nielsen v. St. Paul Companies, 283 Or. 277, 281, 583 P.2d 545 (1978). Wolf agrees that "there are some intentional acts the nature of which is such that it must necessarily be concluded that there was an intention to injure." Id. However, "the court should only infer that the insured had a subjective intent to cause harm or injury as a matter of law when such subjective intent is the only reasonable inference that may be drawn from an insured's conduct." Allstate Ins. Co. v. Stone, 310 Or. 275, 279, 876 P.2d 313 (1994). Wolf argues that an intent to injure is not the only inference that can be made from the allegations of Wolf's conduct contained in P.H.'s complaint. Wolf alleges that a "finder of fact could just as readily find that Mr. Wolf did not have a subjective intent to injure, particularly when he testifies to that fact and particularly when his actions would have been legal, with no inference of an intent

Page 7 - OPINION AND ORDER

to harm, in most of the world." Defendant Wolf's Memo in Support of Motion for Partial Summary Judgment, p. 5.

I disagree and rely on Merrill. Merrill holds that when an adult sexually abuses a minor, an intent to injure is inferred as a matter of law. Id. at p. 412.[1] Wolf's declaration that he did not subjectively intend to injure P.H. is irrelevant, as is Wolf's declaration that his actions would be "legal in other parts of the world." See Merrill, 102 Or. App. at p. 410 (court specifically found that Merrill did not subjectively intend to harm his victim, however also found Merrill's subjective intent irrelevant). Moreover, courts have held that it is the "substance of the complaint, not its form . . . that is at the heart of the inquiry." The inquiry here being whether a complaint can be reasonably interpreted to include an incident within the coverage of the policy and therefore triggering a duty to defend. Marleu v. Truck Ins. Exchange, 333 Or. 82, 91, 37 P.3d 148 (2001).

The cases relied on by Wolf are distinguishable. In American Casualty Co. v. Corum, 139 Or. App. 58, 910 P.2d 1151 (1996), the defendant was a nurse at a hospital who was sued by two adult patients alleging that Corum had sexual contact with them while they are hospitalized. Corum did not involve claims

---

[1] Moreover, a survey completed by the Eighth Circuit in BB v. Continental Ins. Co., 8 F.3d 1288 (8th Cir. 1993) found that courts in 34 states have adopted the rule of inferred intent, i.e., intent to harm is inferred in cases of sexual abuse of a minor.

Page 8 - OPINION AND ORDER

of sexual abuse of minors. In concluding that the insurance company had a duty to defend Corum, the court reasoned that the allegations were susceptible of more than one interpretation. The court held, "[h]ere, the allegations included that Corum, a registered nurse, while employed by [the hospital] and 'acting within the course and scope of his employment,' inserted his fingers into her vagina and probed her genital area.' On remand, we agree with CNA that those allegations cannot be read only as constituting sexual abuse[.]" Corum, 139 Or. App. at p. 64-65. In other words, the court held there was a duty to defend because it was possible to construe the allegations of the complaint to mean something other than sexual abuse.

Wolf also relies on Holloway v. Republic Indemnity Co. of America, 201 Or. App. 376, 119 P.3d 239 (2005), which involved an underlying claim by a 16 year old waitress against her employer, Loree's Chalet Restaurant. Plaintiff alleged that Loree's hired a man named Zullig as a bartender and manager, after which Zullig began directing "lewd and vulgar comments" and "unwelcome sexual advances and physical contact" at plaintiff. Plaintiff brought an action against Loree's asserting three claims: employment discrimination (sexual harassment), constructive discharge, and intentional infliction of emotional distress. The court held that Republic had a duty to defend Loree's because, within the scope of the claim for sexual harassment, plaintiff could have

introduced evidence that Loree's authorized Zullig to give plaintiff a suggestive backrub at work, and that although such conduct would constitute a battery, Loree's would be vicariously liable for the damages that resulted because it authorized the conduct. Id. at 389. Unlike the facts in the case at bar, Loree's was not the perpetrator of the sexual harassment; the conduct for which Loree's might be held vicariously liable was a hypothetical "backrub," versus sexual intercourse, and finally, the insurance policy at issue was a commercial general liability policy that had provisions for dealing with coverage for damages arising out of harassment or termination of an employee.

Finally, the court turns to State Farm Fire and Casualty Co. v. Kirk, cv 03-91-HU, a case decided by this court. There, Kirk was a police officer who was alleged to have sexually assaulted a 17 year old minor. The minor alleged that Kirk's conduct violated his civil rights and constituted negligence. Both Kirk and the victim argued that Kirk's State Farm policy provided coverage for the allegations in the underlying complaint. Judge Hubel however relied on Merrill to find no coverage by State Farm for Kirk's alleged sexual assault of a minor.

I find that sexual abuse of a minor by an adult is exactly "the type of conduct from which an intent to cause harm must necessarily be inferred as a matter of law." Merrill, 102 Or. App. at 410. Further, I agree with Merrill's observation that

the reason sexual abuse of child is a tort and a crime is precisely because of the great risk that the child will be physically and emotional harmed. Therefore, I conclude that an intent to harm P.H. may be inferred both from the acts alleged in the underlying complaint and from the nature of the conduct itself.

Finally, Wolf argues that P.H.'s claims for intentional infliction of emotional distress, breach of fiduciary duty and negligence stand "independently" of P.H.'s allegation of sexual assault against Wolf. Again, I disagree. Despite P.H.'s filing of a Second Amended Complaint against Wolf, I find that none of P.H.'s claims for relief would exist without the allegations of sexual abuse that are re-alleged and incorporated in every claim. P.H.'s three claims named above are derivative in nature, they are so intertwined with Wolf's alleged sexual misconduct as to be inseparable. Further, I note that P.H.'s claims are based on conduct that occurred between 1998 and 1999. Or. Rev. Stat. 12.117 extend the statute of limitations for claims of "child abuse," defined as either (1) intentional conduct by an adult that results in physical or mental injury to a child caused by cruelty to the child; or (2) various sexual crimes including sexual abused as defined in ORS Chapter 163. Therefore, P.H.'s three derivative claims are based on either intentional cruelty or sexual abuse committed by Wolf. If P.H.'s claims were truly

"stand alone" claims, then they would have ripened within two years after P.H. attained the age of 18. Or. Rev. Stat. 12.110 and 12.160.

## CONCLUSION

Plaintiff's motion for partial summary judgment (doc. 10) is granted. Defendant Wolf's cross-motion for summary judgment (doc. 26) is denied. Further, the parties' request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this 16 day of November 2005.

_____
Ann Aiken
United States District Judge